UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CALVIN McCLINTON,**

               Plaintiff,

v

**CITY OF LANSING,** a
municipal corporation,

               Defendant.

_____/

**Case No:**

Hon:

Mag:

Ayanna D. Neal (P64128)
GREWAL LAW PLLC
*Attorneys for Plaintiff*
2290 Science Parkway
Okemos, MI 48864
t: (517) 393-3000
aneal@4grewal.com

_____/

## COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, Calvin McClinton, by and through his attorney, Ayanna D. Neal

of GREWAL LAW PLLC, and for his Complaint against the City of Lansing ("Defendant Lansing"

or "Lansing") states as follows:

## GENERAL ALLEGATIONS AND VENUE

1.     This is an action stating a federal cause of action pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 USC 2000e et seq., and discrimination and hostile work

environment pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

2.      Plaintiff, Calvin McClinton ("Mr. McClinton"), at all times relevant herein, was a resident of the City of Lansing, Ingham County, Michigan.

3.      Defendant City of Lansing is a municipal corporation and is a governmental body organized and existing under the constitution and laws of the State of Michigan, operating as the City of Lansing in the County of Ingham, State of Michigan, and conducts business within the territorial limits of the United States District Court of the Western District of Michigan.

4.      Lansing Board of Water and Light ("LBWL") is a governmental entity described by Defendant Lansing as follows:

> The BWL shall have full and exclusive management of the water, heat, steam, electric and such additional utility services of the City of Lansing as agreed upon by the Board and City Council.  The Board shall be responsible to the Mayor and the City Council for the provision of the services in a manner consistent with the best practices (5-201).  The Board shall appoint a General Manager who shall be responsible for carrying out the duties assigned by the Board and shall serve at its pleasure.  The Board shall also appoint and oversee an Internal Auditor and Corporate Secretary, both of whom shall report directly to the Board (5-202).

5.      The incidents which are the subject matter of this lawsuit occurred in Ingham County, Michigan.

6.      This Honorable Court has "federal question" jurisdiction pursuant to 28 USC § 1331 for the reason that the Plaintiff's Complaint states claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC §2000 et. seq.

7.      This Court has jurisdiction over State pendent claims pursuant to the Elliot-Larsen Civil Rights Act, Act 453 of 1976.

8.      This Honorable Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 USC §1367 because all claims are substantially related as to form part of the same case.

9.      Venue is proper in this judicial district pursuant to 28 USC §1391 for the reason that the unlawful acts alleged occurred within this judicial district.

10.      Plaintiff timely filed his Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), attached as **Exhibit A**.

11.      Plaintiff received his Right-to-Sue Letters from the EEOC, dated September 9, 2025, attached as **Exhibit B.**

12.      Plaintiff filed this Complaint within 90-days of receiving his Right-to-Sue Letter from the EEOC.

## SPECIFIC FACTUAL ALLEGATIONS

13.      Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

14.      Mr. McClinton was hired to work as a Water Production Helper for LBWL on or about May 13, 2019.

15.      Mr. McClinton performed his job duties and responsibilities in a manner that, at a minimum, demonstrated that he was qualified for his position and exceeded his employer's expectations.

16.      During his employment he was sexually assaulted in 2020 by another Mr. Andrew Garza, a white man, during a company outing.

17.      Despite reporting the assault, Mr. McClinton was told by the LBWL Director of Human Resources, Mr. Michael Flowers, that the attacker was important to the Operations Department and was not being moved from his position but that he, Mr. McClinton was being transferred to Operations because he was "just there to make money" and "just there for the insurance" and should be grateful for being hired.

18.    Mr. McClinton has since been transferred to different positions within LBWL and has suffered many injuries during work which have required surgeries and have limited his mobility.

19.    As a result of the lifting heavy items, his knee blew out and required surgery in July 2021, and his back has been injured requiring steroid shots.

20.    Mr. McClinton has been transferred to the Water Plant which is injurious to his health because soda ash, lime, calcium and phosphates negatively impact his health and heart, particularly since he had open heart surgery in June 2023.

21.    Mr. McClinton has endured many racial comments, negative work treatment based upon race, and a hostile work environment by supervisors and other employees.

22.    White employees have reported that he has shoveled snow incorrectly or improperly, that his timecard was not entered properly, and have harassed him just because of his race.

23.    Mr. McClinton has informed LBWL's leadership of his health restrictions and the negative impact the work environment has caused him and his need for accommodation.

24.    In 2021, Mr. McClinton was employed in the Central Maintenance Construction ("CMC") area as an assistant.

25.    After approximately 2-3 weeks Mr. McClendon of LBWL started complaining about Mr. McClinton's knee and that maybe he should have surgery.  More specifically, he asked, "Are you sure you're able to do this? How's the knee?"

26.    Shortly thereafter Mr. McClinton received a telephone call from Mr. Barnes from HR who told him he was being transferred back to the Water Plant and that he didn't have the scores to be in CMC.

27.     Upon information and belief, Mr. Green had told Mr. Barnes that Mr. McClinton didn't have the scores in math, reading and writing to be an assistant in CMC.

28.     Mr. McClinton's heart doctor, Dr. Doss, sent a letter to LBWL's HR department stating that because of his heart condition, Mr. McClinton couldn't work around the lime and other chemicals in the Water Plant.

29.     Even though Mr. McClinton is qualified to do many other jobs, his supervisor, Mr. Tony Green, told him that he would need to go home if he didn't work in the Water Plant.

30.     Working in the Water Plant requires dumping lime into a truck which then gets taken to a granger.

31.     Mr. McClinton wears gloves in the Water Plant but has no protective material or covering over his face.  He's in contact with lime for approximately one (1) hour a day while in the Water Plant.

32.     Despite his health restrictions, LBWL scheduled him to handle tasks that would require him to lift weight beyond his restriction and work in areas that exacerbate his heart condition. When he has reminded LBWL of those restrictions, they fail to make any changes to his work conditions.

33.     Due to LBWL's culture of racial hostility and discrimination, Mr. McClinton has suffered and continues to suffer from severe emotional distress. As a direct and proximate result of the failures of LBWL and its leadership, Mr. McClinton has suffered and continues to suffer from serious injuries, including but not limited to: health ailments to his heart, knee and back; racial discrimination; sexual assault; severe emotional distress; depression; mental pain and anxiety; past, present, and future medical treatment; and psychological harm and injury.

34.    At all relevant times, Plaintiff performed his job duties and responsibilities in a manner that, at a minimum, demonstrated that he was qualified to retain his position.

35.    In 2023, Mr. McClinton had enrolled in an apprenticeship program at Lansing Community College for advancement at LBWL to a position of Apprentice Maintenance Mechanic, but he was removed from the program by the Joint Apprenticeship and Licensing Committee (JALC) on or about May 21, 2024.

36.    As a result, LBWL terminated Mr. McClinton's position as an Apprentice Maintenance Mechanic.

37.    Once again Mr. McClinton was told that he would be able to apply for another position at CMC.

38.    Mr. Barnes told Mr. McClinton that he was "voted out of your position as Apprentice Maintenance Mechanic by the JALC on May 21, 2024, in line with the CBA and the apprenticeship agreement which you signed."

39.    Mr. Barnes told Mr. McClinton that meetings were held between JALC and Mr. McClinton regarding his performance and progress and that he was told he was not likely to be successful in the class and that final grades were issued that showed his attendance and performance was "substandard." Mr. Barnes noted that any meetings held after grades were issued were irrelevant and that JALC voted as a committee that he was not upholding his obligations to the program.

40.    Plaintiff informed Mr. Barnes and other leadership that he had not failed in the program, that his grade was incomplete following his knee surgery on January 29, 2024, and that he was temporarily unable to stand for long periods of time which impacted his ability to attend certain classes and perform certain welds and activities in class.

41.    Mr. McClinton also informed Mr. Barnes that Mr. Scott Poe, his lead instructor with the apprenticeship program, said he would help Mr. McClinton and that they were scheduled to work together on June 7, 2024, to complete his welds and finalize his grade to complete the program for advancement at LBWL.

42.    LBWL leadership decided not to allow Mr. McClinton to complete the program and become an apprentice.  Mr. Barnes's told Mr. McClinton, "JALC voted as a committee that you were not upholding your (Mr. McClinton's) obligations of the program for which you signed up for." Mr. Barnes indicated that Mr. McClinton's attendance and low grade in the class was why JALC voted to remove him from the program.  Mr. McClinton conveyed to Mr. Barnes that it was his health that interfered with his class work and that he didn't understand if the professor was willing to continue working with him why he couldn't complete the program.

43.    Mr. McClinton has also suffered from a back injury and open-heart surgery while working at LBWL.  He has repeatedly told LBWL's HR about his ailments and provided HR with documentation from his medical doctor, that he has lifting restrictions, and that working in the Water Plant exacerbates his heart issues because of the proximity and working with chemicals like ash, lime, etc.  Still, the HR department refused to remedy his placement and/or heed Mr. McClinton's doctor's orders and restrictions related to his health.

44.    Mr. McClinton is aware that coworkers have filed suit against LBWL for similar instances of racial discrimination.  Taken together with the actions LBWL have taken against Mr. McClinton, the discriminatory conduct against all Black employees must be considered to determine whether an employer such as LBWL has created a hostile environment.

45.    LBWL's actions against Mr. McClinton meet the elements required to satisfy a claim under Title VII and the ELCRA. Failing to investigate or punish Mr. Garza following his

sexual assault of Mr. McClinton and then brushing it under the rug by transferring Mr. McClinton

to the Water Plant because Mr. Garza "was too important to the Operations Department" signifies

just one such example of discriminatory treatment.

46.      Additionally, the LBWL Director's discriminatory statements to Mr. McClinton

that he "was just there for the insurance," constitutes further evidence that somehow Mr.

McClinton, as a black man, was only hired and retained there for a paycheck and to gain insurance

rather than to make a career out of working for the LBWL.

47.       In fact, Mr. McClinton has attempted to make a career there.  He entered an

apprenticeship program and was progressing until a knee injury slowed him.   Then, his

participation was terminated without his consent or even knowledge as to the reason.  This resulted

even though his supervisor in the program had already agreed to work with him to help him

complete his final welds and work.

48.      Further, and more damning, Mr. McClinton has been continually transferred around

LBWL, ending up in the Water Plant, the department that is most harmful to his heart health.

49.      He has endured knee injuries due to having to lift weights beyond his restrictions,

undergone back surgery related to his work there, and finally has had open heart surgery related to

the anxiety and depression he has gained from working at LBWL.

50.      In the Water Plant, Plaintiff has been forced to work around chemicals such as ash

and lime which his doctor has warned against and ordered against due to his heart condition.  In

response, LBWL leadership has told Mr. McClinton that he can either work there or he can go

home.

51.     Mr. Barnes and Mr. Green occupy management positions within LBWL. They can and have taken tangible employment action against Mr. McClinton during his employment at LBWL.

52.     During COVID, Mr. McClinton was told by LBWL Geneva Vanlerberg, that he had to receive the COVID vaccine if he wanted to continue working at LWBL.  Several of Mr. McClinton's white coworkers did not receive the COVID vaccine.  Mr. McClinton, however, did receive the COVID vaccine as he felt pressure from the LBWL that if he didn't that he would be terminated. Mr. McClinton was constantly told by Ms. Vanlerberg that he had to receive the COVID vaccine to maintain his employment with LBWL. Ms. Nikki Alexander, a LBWL chemist, was present at least once when Mr. McClinton was told he had to get the COVID vaccine or he would lose his job.

## COUNT I – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT RACIAL DISCRIMINATION

53.     Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

54.     At all times relevant herein, Plaintiff was an employee and Defendant City of Lansing was an "employer" within the meaning of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*, as amended.

55.     Plaintiff is a member of a protected class based upon his race.

56.     At all times relevant herein, under the ELCRA, Plaintiff had a right to employment free of discrimination based on his race.

57.     Defendant violated Plaintiff's rights under the ELCRA by acts, including but not limited to:

a.  Failing to investigate or punish Mr. Garza following his sexual assault of Mr. McClinton and then brushing it under the rug by transferring Mr. McClinton to the Water Plant because Mr. Garza "was too important to the Operations Department;"

b.  LBWL's Director's discriminatory statements to Mr. McClinton that he "was just there for the insurance," constituted further evidence that Mr. McClinton, as a black man, was only hired and retained there for a paycheck and to gain insurance rather than to make a career out of working for the LBWL;

c.  Transferring Plaintiff around LBWL to different departments without any reasons given;

d.  Forcing Mr. McClinton to work in the Water Plant despite his doctor's letter to LBWL that working in such an environment around ash and lime was hazardous to his health;

e.  Facing racial taunts and harassment from white LBWL employees and when Plaintiff complained to management nothing was done to stop such actions;

f.  Terminating Mr. McClinton's placement in the Lansing Community College apprenticeship program despite the fact that his supervisor for the program stated he would help Mr. McClinton finish his final work in the program and that the injuries Mr. McClinton had suffered to his back and knees that limited his ability to attend all classes and complete the final welds for the program were caused by LBWL's actions in having him work with materials heavier than his restrictions allowed;

g. Otherwise discriminating against and disparately treating Plaintiff and other persons of color on the basis of their race with respect to the terms, conditions, and privileges of their employment, as stated herein.

58. As a direct and proximate result of Defendant's discriminatory and illegal acts, which acts were based on unlawful considerations of Plaintiff's race, Plaintiff suffered damages, including but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, (3) a sense of outrage and injury to Plaintiff's feelings, and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendant Lansing, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

## COUNT II – RACE DISCRIMINATION
## TITLE VII (42 USC § 2000e)

59. Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

60. At all times relevant herein, Plaintiff was an "employee" and Defendant Lansing was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

61. Mr. McClinton is a member of a protected class based upon his race.

62.    Defendant had a duty under Title VII not to discriminate against Plaintiff in his employment on the basis of race.

63.    Defendant violated Title VII by discriminating against Plaintiff because of his race in the following respects:

    a.  Failing to investigate or punish Mr. Garza following his sexual assault of Mr. McClinton and then brushing it under the rug by transferring Mr. McClinton to the Water Plant because Mr. Garza "was too important to the Operations Department;"

    b.  LBWL's Director's discriminatory statements to Mr. McClinton that he "was just there for the insurance," constituted further evidence that Mr. McClinton, as a black man, was only hired and retained there for a paycheck and to gain insurance rather than to make a career out of working for the LBWL;

    c.  Transferring Plaintiff around LBWL to different departments without any reasons given;

    d.  Forcing Mr. McClinton to work in the Water Plant despite his doctor's letter to LBWL that working in such an environment around ash and lime was hazardous to his health;

    e.  Facing racial taunts and harassment from white LBWL employees and when Plaintiff complained to management nothing was done to stop such actions;

    f.  Terminating Mr. McClinton's placement in the Lansing Community College apprenticeship program despite the fact that his supervisor for the program stated he would help Mr. McClinton finish his final work in the program and that the injuries Mr. McClinton had suffered to his back and knees that limited

his ability to attend all classes and complete the final welds for the program were caused by LBWL's actions in having him work with materials heavier than his restrictions allowed;

g.  Otherwise discriminating against and disparately treating Plaintiff and other persons of color on the basis of their race with respect to the terms, conditions, and privileges of their employment, as stated herein.

64.   As a direct and proximate result of Defendant Lansing's unlawful actions against Plaintiff as described, Plaintiff suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits; (2) personal injuries including, but not limited to, mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments; (3) a sense of outrage and injury; and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendant, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as other further legal or equitable relief as this Court deems appropriate and available under the law.

## COUNT III - HOSTILE WORK ENVIRONMENT
## TITLE VII (42 U.S.C. §2000e)

65.   Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

66.    At all times relevant herein, Mr. McClinton was an "employee" and Defendant Lansing was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC §2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

67.    Mr. McClinton is a member of a protected class based upon his race.

68.    Defendant Lansing had a duty under Title VII not to discriminate against Plaintiff in his employment on the basis of his race.

69.    Plaintiff was discriminated against by Defendant Lansing while working for Defendant.

70.    Plaintiff was subjected to this conduct on the basis of his race.

71.    Defendant violated Title VII by discriminating against Mr. McClinton because of his race in the following respects:

    a.    Failing to investigate or punish Mr. Garza following his sexual assault of Mr. McClinton and then brushing it under the rug by transferring Mr. McClinton to the Water Plant because Mr. Garza "was too important to the Operations Department;"

    b.    LBWL's Director's discriminatory statements to Mr. McClinton that he "was just there for the insurance," constituted further evidence that Mr. McClinton, as a black man, was only hired and retained there for a paycheck and to gain insurance rather than to make a career out of working for the LBWL;

    c.    Transferring Plaintiff around LBWL to different departments without any reasons given;

d.  Forcing Mr. McClinton to work in the Water Plant despite his doctor's letter to LBWL that working in such an environment around ash and lime was hazardous to his health;

e.  Facing racial taunts and harassment from white LBWL employees and when Plaintiff complained to management nothing was done to stop such actions;

f.  Terminating Mr. McClinton's placement in the Lansing Community College apprenticeship program despite the fact that his supervisor for the program stated he would help Mr. McClinton finish his final work in the program and that the injuries Mr. McClinton had suffered to his back and knees that limited his ability to attend all classes and complete the final welds for the program were caused by LBWL's actions in having him work with materials heavier than his restrictions allowed;

g.  Otherwise discriminating against and disparately treating Plaintiff and other persons of color on the basis of their race with respect to the terms, conditions, and privileges of their employment, as stated herein.

72.  As a result of this conduct, Plaintiff was subjected to a racially hostile work environment.

73.  The actions of Defendant were intentional.

74.  The actions of Defendant were unwelcome and without the consent of Plaintiff.

75.  Defendant's unwelcome treatment of Plaintiff in transferring him from department to department without cause or reason and forcing him to reapply for work; failure to address the sexual assault by Mr. Garza upon Plaintiff; reduction in work opportunities; failure to take Plaintiff's health into account regarding his work opportunities; and allowing a racially charged

work environment to exist was intended to and/or did substantially interfere with Plaintiff's employment in that it created an intimidating, hostile and offensive work environment.

76.    The conduct of Defendant Lansing in failing to create a work environment free of racial discrimination, failing to create a work environment free of sexual discrimination, and failure to take the appropriate remedial steps to prevent the hostile work environment and harassment because of Plaintiff's race constitutes discrimination in violation of 42 USC § 2000e.

77.    As a direct and proximate result of Defendant Lansing's unlawful actions against Plaintiff as described, Plaintiff has suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, (3) a sense of outrage and injury to Plaintiff's feelings, and (4) injury to Plaintiff's professional reputation.

**WHEEFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendant, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

## COUNT IV – HOSTILE WORK ENVIRONMENT
## ELLIOTT-LARSEN CIVIL RIGHTS ACT

78.    Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

79.    At all times relevant herein, Plaintiff was an employee and Defendant Lansing was an "employer" within the meaning of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*, as amended.

80.    Plaintiff is a member of a protected class based upon his race.

81.    Plaintiff was treated to a hostile work environment by Defendant Lansing, on site, and while working for Defendant.

82.    Plaintiff was subjected to this conduct on the basis of his race.

83.    The hostile work environment included, but is not limited to:

a.    Failing to investigate or punish Mr. Garza following his sexual assault of Mr. McClinton and then brushing it under the rug by transferring Mr. McClinton to the Water Plant because Mr. Garza "was too important to the Operations Department;"

b.    LBWL's Director's discriminatory statements to Mr. McClinton that he "was just there for the insurance," constituted further evidence that Mr. McClinton, as a black man, was only hired and retained there for a paycheck and to gain insurance rather than to make a career out of working for the LBWL;

c.    Transferring Plaintiff around LBWL to different departments without any reasons given;

d.    Forcing Mr. McClinton to work in the Water Plant despite his doctor's letter to LBWL that working in such an environment around ash and lime was hazardous to his health;

e.    Facing racial taunts and harassment from white LBWL employees and when Plaintiff complained to management nothing was done to stop such actions;

f.   Terminating Mr. McClinton's placement in the Lansing Community College apprenticeship program despite the fact that his supervisor for the program stated he would help Mr. McClinton finish his final work in the program and that the injuries Mr. McClinton had suffered to his back and knees that limited his ability to attend all classes and complete the final welds for the program were caused by LBWL's actions in having him work with materials heavier than his restrictions allowed;

g.   Otherwise discriminating against and disparately treating Plaintiff and other persons of color on the basis of their race with respect to the terms, conditions, and privileges of their employment, as stated herein.

84.    As a result of this conduct, Plaintiff was subjected to a hostile work environment.

85.    The actions of Defendant were intentional.

86.    The actions were intended to and/or did substantially interfere with Plaintiff's employment in that it created an intimidating, hostile, and offensive work environment.

87.    The conduct of Defendant in discriminating against Plaintiff because of his race constitutes discrimination in violation of MCL 37.2101 *et seq*.

88.    As a direct and proximate result of Defendant Lansing's unlawful actions against Plaintiff as described, Plaintiff  has suffered injuries and damages, including, but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, (3) a sense of outrage and injury to Plaintiff's feelings, and (4) injury to Plaintiff's professional reputation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendant, in favor of Plaintiff in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

**GREWAL LAW PLLC**

Respectfully submitted,

Dated: December 8, 2025        By:    /s/ Ayanna D. Neal
                                                    Ayanna D. Neal (P64128)
                                                    *Attorney for Plaintiff*

## <u>DEMAND FOR JURY TRIAL</u>

**NOW COMES** Plaintiff, Calvin McClinton, by and through his attorneys, Ayanna D. Neal and GREWAL LAW PLLC, and hereby makes a demand for a trial by jury in the above-entitled matter.

                               **GREWAL LAW PLLC**

                               Respectfully submitted,

Dated: December 8, 2025          By:    */s/ Ayanna D. Neal_____*
                                      Ayanna D. Neal (P64128)
                                      *Attorney for Plaintiff*