UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CALVIN McCLINTON,

Plaintiff,

v.

LANSING BOARD OF WATER AND LIGHT,

Defendant.

Case No. 1:25-cv-1686

Hon. Hala Y. Jarbou

______________________________/

**OPINION**

Plaintiff Calvin McClinton brings this complaint against his employer, the Lansing Board of Water and Light (LBWL), alleging race discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws §§ 37.2101–37.2804. The BWL now moves to dismiss McClinton's first amended complaint for failure to state a claim (ECF No. 22). For the reasons discussed below, the Court will grant the motion.

**I. BACKGROUND**

The LBWL is a municipally owned, not-for-profit electric utility providing electric service to the greater Lansing area. (Am. Compl. ¶¶ 3–4, ECF No. 10); *Consumers Power Co. v. Lansing Bd. of Water & Light*, 503 N.W.2d 680, 681 (Mich. 1993). McClinton, who is black, was first hired by the LBWL as a Water Production Helper in May of 2019. (Am. Compl. ¶ 14.) He alleges that in 2020, he was sexually assaulted by a white employee at a company outing. (*Id.* ¶ 16.) McClinton reported the assault to Human Resources, but the other employee kept his position

because, according to Human Resources Director Michael Flowers, he "was important to the Operations Department." (*Id.* ¶ 17.) The LBWL also transferred McClinton to the Operations Department. At the time, Flowers told McClinton that "he was 'just there to make money' and 'just there for the insurance' and should be grateful for being hired." (*Id.*)

McClinton also alleges that the LBWL has frequently assigned him jobs that harm his health. His work has caused him multiple injuries that "have required surgeries and have limited his mobility." (*Id.* ¶¶ 18–19.) For example, "[a]s a result of . . . lifting heavy items, his knee blew out and required surgery in July 2021, and his back has been injured requiring steroid shots." (*Id.* ¶ 19.) He was also assigned to work at the Water Plant, "which is injurious to his health because soda ash, lime, calcium and phosphates negatively impact his health and heart, particularly since he had open heart surgery in June 2023." (*Id.* ¶ 20.) McClinton "has informed LBWL's leadership of his health restrictions and the negative impact the work environment has caused him and his need for accommodation." (*Id.* ¶ 23.) McClinton's doctor "sent a letter to LBWL's HR department stating that because of his heart condition, Mr. McClinton couldn't work around the lime and other chemicals in the Water Plant." (*Id.* ¶ 28.) However, McClinton's supervisor "told him that he would need to go home if he didn't work in the Water Plant." (*Id.* ¶ 29.)

The LBWL has also "scheduled [McClinton] to handle tasks that would require him to lift weight beyond his restriction and work in areas that exacerbate his heart condition." (*Id.* ¶ 32.) McClinton "has reminded LBWL of those restrictions" but the LBWL has "fail[ed] to make any changes to his work conditions." (*Id.*) In 2021, while McClinton was working in the Central Maintenance Construction area, another LBWL employee "started complaining about Mr. McClinton's knee" and suggesting "that maybe he should have surgery." (*Id.* ¶ 25.) The employee asked McClinton, "Are you sure you're able to do this? How's the knee?" (*Id.*) Soon after, the

LBWL transferred McClinton back to the Water Plant because he "didn't have the scores to be in" the Central Maintenance Construction area. (*Id.* ¶¶ 26–27.)

In 2023, McClinton began an apprenticeship program at Lansing Community College that allowed him to advance to an Apprentice Maintenance Mechanic position at the LBWL. (*Id.* ¶ 35.) However, the Joint Apprenticeship and Licensing Committee (JALC) removed McClinton from the apprenticeship program in May of 2024, causing the LBWL to remove him from the Apprentice Maintenance Mechanic position. (*Id.* ¶¶ 35–36.) The JALC explained that it removed McClinton because "his attendance and performance [were] 'substandard.'" (*See id.* ¶ 39.) McClinton explained to the LBWL "that his grade [in the program] was incomplete following his knee surgery on January 29, 2024, and that he was temporarily unable to stand for long periods of time[,] which impacted his ability to attend certain classes and perform certain welds and activities in class." (*Id.* ¶ 40.) The lead instructor of the program told McClinton that he would help him "complete his welds and finalize his grade to complete the program" (*id.* ¶ 41), but the LBWL decided to remove him from the program anyway (*id.* ¶ 42).

McClinton also alleges that he has been subject to a "culture of racial hostility and discrimination" at the LBWL. (*Id.* ¶ 33.) He claims that "[w]hite employees have reported that he has shoveled snow incorrectly or improperly, that his timecard was not entered properly, and have harassed him just because of his race." (*Id.* ¶ 22.) And he asserts that he "fac[ed] racial taunts and harassment from white LBWL employees," but "when [he] complained to management nothing was done to stop such actions." (*Id.* ¶ 57(e).) Further, he alleges that during the COVID-19 pandemic, he "was told by LBWL's Geneva Vanlerberg[] that he had to receive the COVID vaccine if he wanted to continue working at LWBL." (*Id.* ¶ 52.) However, he notes that "[s]everal of [his] white coworkers did not receive the COVID vaccine." (*Id.*)

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. ANALYSIS

McClinton brings claims for race discrimination in violation of the ELCRA (Count I), race discrimination in violation of Title VII (Count II), a hostile work environment in violation of Title VII (Count III), and a hostile work environment in violation of the ELCRA (Count IV). For the reasons explained below, the Court finds that McClinton has failed to state a Title VII claim. It

will also decline to exercise supplemental jurisdiction over his ELCRA claims and dismiss the case.

**A. Title VII Race Discrimination**

"Title VII makes it unlawful for an employer to 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin.'" *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 561 (6th Cir. 2004) (quoting 42 U.S.C. §§ 2000e–2(a)(1)). To state a race discrimination claim under Title VII, McClinton must allege facts sufficient to allow the Court to draw a reasonable inference that his employer discriminated against him on the basis of race. *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). "[B]road and conclusory allegations of discrimination" alone are not enough. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012). "While a Title VII plaintiff need not establish a prima facie case at the motion to dismiss stage, courts have looked to the prima facie requirements when determining whether a Title VII plaintiff has pleaded an actionable claim." *Towns v. Memphis/Shelby Cnty. Health Dep't*, No. 17-cv-2626, 2019 WL 639050, at *4 (W.D. Tenn. Jan. 25, 2019), *R&R adopted*, 2019 WL 639025 (W.D. Tenn. Feb. 14, 2019). To establish a prima facie case of race discrimination under Title VII, a plaintiff must show that he is 1) a member of a protected class who was 2) qualified for and proficient at his job and 3) suffered an adverse employment action despite his qualifications and performance 4) while being treated less favorably than a similarly situated non-member of his protected class. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014).

McClinton has failed to allege facts supporting the reasonable inference that he was discriminated against based on race. His conclusory assertions that he faced racist treatment or was harassed due to his race do not suffice under Rule 12(b)(6). Nor it is enough to vaguely allege

that white employees subjected him to "racial taunts." (Am. Compl. ¶ 57(e).) Although he also points to some specific actions the LBWL took against him, none appear to be based on race.

First, McClinton alleges that "[w]hite employees have reported that he has shoveled snow incorrectly or improperly [and] that his timecard was not entered properly." (*Id.*) But the mere fact that these employees were white does not establish that they acted based on race. And McClinton does not even allege that these employees' reports were false.

Next, McClinton argues that the LBWL failed to investigate his sexual assault claim or punish the perpetrator, who was white. However, in the absence of any allegations regarding how the LBWL responded to other claims of sexual assault by non-black employees, there is no reason to think the LBWL's response was motivated by racial discrimination.

Third, McClinton contends that his removal from the apprenticeship program and his assignment to unhealthy jobs was based on his race. But again, he does not justify his inference that the LBWL acted for racially discriminatory reasons. He asserts that a racially discriminatory motive was revealed by Flowers's comment that McClinton "was just there for the insurance" (*id.* ¶ 46), but the Court can discern no connection between race and the assertion that an employee has only obtained employment in order to gain health insurance.

Finally, McClinton argues that he was treated differently than white employees in that he was required to receive the COVID-19 vaccine and they were not. Even assuming that requiring an employee to receive a vaccine qualifies as an adverse employment action under Title VII—*but see Doe(s) v. Pittsburgh Reg'l Transit*, 684 F. Supp. 3d 417, 426 (W.D. Pa. 2023)—McClinton has not established that he and the white employees were treated differently. He asserts that he was told to get a vaccine, and they did not get the vaccine, but he does not assert that they were not *told* that they had to get the vaccine. Thus, it may be that the LBWL told all employees they

needed to get the vaccine, and some simply ignored that requirement. If so, there would be no racial discrimination.

In sum, McClinton does not state a claim for race discrimination under Title VII because he has not alleged facts supporting an inference that the LBWL treated him differently based on race. McClinton asserts that additional facts included in his response to the motion to dismiss—but not appearing in his amended complaint—are sufficient to state a claim. But the Court cannot consider such allegations when resolving this motion. *See Bassett*, 528 F.3d at 430.

**B. Title VII Hostile Work Environment**

A hostile work environment exists when a workplace is "permeated with 'discriminatory intimidation, ridicule, and insult' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 683 (6th Cir. 2024) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). McClinton's hostile work environment claim fails for the same reason as his Title VII claim—there is no evidence that any of the allegedly harmful actions taken by the LBWL were based on McClinton's race. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) ("[W]hile Bowman recites a litany of perceived slights and abuses, many of the alleged harassing acts cannot be considered in the hostile environment analysis because Bowman has not shown that the alleged harassment was based upon his [membership in a protected class].").

**IV. CONCLUSION**

For the reasons explained above, the Court will dismiss McClinton's Title VII claims. Moreover, because the Court has dismissed the federal claims that formed the basis of its jurisdiction over this case, it will decline to exercise supplemental jurisdiction over McClinton's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d

1244, 1254 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").

An order and judgment will issue in accordance with this Opinion.

Dated: August 17, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE